UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COREY CHAMBLISS,

Plaintiff,

v.

UNKNOWN LOUNDS et al.,

Defendants.

Case No. 2:25-cv-305

Honorable Jane M. Beckering

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Mack, Grand Prairie Healthcare Services, Inc. (GPH), Yes Care Services, Inc. (YCS), GEO Care Services, Inc. (GEO), Well-Path Healthcare Services, Inc. (Well-Path), Ferraro, Neal, Elliot, Longsome, Unknown Party #1 (Nurse #1), Unknown Party #2 (Nurse #2), Smith, Teneyck, Moran, and Mills. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, as to the remaining Defendants Lounds, Radar, Griggs, Grover, Bator, Blossom, Correctional Facility Healthcare Services (Kinross Healthcare Services (KHS)), Jones, and Mahar, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint against the remaining Defendants for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following KCF corrections officers (COs): Unknown Lounds, Unknown Radar, Unknown Griggs, Unknown Grover, Unknown Bator, Unknown Blossom, Sergeant Unknown Mills, Unknown Smith, Sergeant Unknown Ferraro, Unknown Neal, Unknown Longsome, Unknown Elliot, Inspector Unknown Teneyck, and Sergeant Unknown Moran. (Compl., ECF No. 1, PageID.6–8.) Plaintiff also sues Shannon Jones, Kirk Mahar, Cassidy Mack, Nurse #1, Nurse #2, KHS, GPH, YCS, GEO, and Well-Path. (*Id*., PageID.1, 8–10.)

In Plaintiff's complaint, he alleges that he is diagnosed as seeing and hearing impaired and diagnosed with an unspecified mental illness. (*Id*., PageID.6.)

#### A. May 2024

On May 4, 2024, Plaintiff was in the bathroom in KCF Housing Unit A (HU-A). After getting out of the shower, Plaintiff started experiencing shortness of breath and excessive sweating, which Plaintiff asserts are symptoms of his diagnosed high blood pressure and hypertension. (*Id*., PageID.11–12.) Plaintiff was slightly bent over with his hands on his knees, trying to catch his

breath, when Defendant Lounds came into the bathroom and asked Plaintiff if he was okay. (*Id.*, PageID.12.) Plaintiff responded, "I think I'm fine," and Defendant Lounds left.[1] (*Id.*)

About ten minutes later, Plaintiff claims Defendant Lounds "aggressively rush[ed]" into the bathroom with Defendant Radar, Defendant Griggs, and "three to five other unknown COs," yelling, "Clear out!" (*Id.*) Plaintiff was still trying to catch his breath, and once he did, Plaintiff asked, "What's going on?" (*Id.*) Defendant Radar responded, "We believe you're on some kind of substance!" (*Id.*) Plaintiff explained that he was not on drugs, that his condition was "related to symptoms of his blood pressure," and that the symptoms occur "suddenly and unexpectedly." (*Id.*) Defendants Lounds, Radar, and Griggs said they did not believe Plaintiff. (*Id.*) Defendants Lounds and Radar "aggressively stood Plaintiff upright" with his arms behind his back, and Defendant Radar placed Plaintiff in handcuffs. (*Id.*) Plaintiff asserts he did not resist, and Plaintiff then heard Defendant Grover "falsely yell out, 'He's a fighter!'" (*Id.*) Plaintiff asserts that this caused Defendants Lounds, Radar, Griggs, and "a few of the other unknown COs to react violently by violently throwing Plaintiff to the floor." (*Id.*) Plaintiff "land[ed] partly on his face." (*Id.*) Plaintiff alleges that Defendants "Lounds, Radar, Griggs, and the COs began tossing, shoving, kicking, and fist-punching Plaintiff across the floor in flurries of assaults, all while Plaintiff screamed and yell[ed] for help to no avail." (*Id.*) Plaintiff was then put in a restraining wheelchair and taken to the control center, where a non-party "unknown Sergeant . . . told the COs to 'take [Plaintiff] to healthcare.'" (*Id.*, PageID.13.)

Plaintiff was then taken to Defendant KHS and drug tested by Defendant Mack. (*Id.*) Plaintiff asserts the result of the drug test was negative. (*Id.*) Then, Plaintiff asked Defendant Mack

---

[1] In this Opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

if she could treat his "face, head, and neck wounds . . . as well as swelling from the bruises and cuts to his hands and wrists." (*Id.*) Plaintiff states that Defendant Mack responded, "We can't treat wounds caused by staff." (*Id.*) Defendant Mack later called for an ambulance due to Plaintiff's "visible injuries." (*Id.*)

When Plaintiff arrived at the hospital, Plaintiff asserts that a non-party ER nurse did not check his vitals and instead told Plaintiff, "We're only testing for drugs." (*Id.*, PageID.14.) Plaintiff asserts that, "to illegally save on costs and to prevent treatment of Plaintiff's visible injuries, [Defendants] KHS, GPH, YCS, GEO, and Well-Path had already told the hospital to avoid x-rays on Plaintiff's head, chest, stomach, and legs, because those standard procedures were intentionally avoided." (*Id.*, PageID.13.) Plaintiff asserts that the result of the drug test at the hospital was also negative. (*Id.*, PageID.14.) Plaintiff claims that "at the unlawful direction of KHS, GPH, YCS, GEO and Well-Path, Plaintiff was returned to KCF without being treated for [his] obvious injuries caused by [Defendants] Lounds, Radar, Griggs, and the unknown COs . . . ." (*Id.*) When Plaintiff returned to KCF from the hospital, Plaintiff alleges that Defendants Griggs and KHS "retaliated by having [Defendant] Nurse #2 conduct another drug test."[2] (*Id.*) Plaintiff asserts the result of this test was also negative. (*Id.*)

[2] In Plaintiff's complaint, he asserts that Defendants "Griggs, KHS, *and the HC Defs* retaliated by having Defendant Nurse #2 conduct another drug test." (*See* Compl., ECF No. 1, PageID.14 (emphasis added).) In Plaintiff's complaint, he groups several defendants as "HC Defs" which appears to stand for "Healthcare Defendants." (*See id.*, PageID.8–10.) However, Plaintiff has not named "Healthcare Defendants" as a Defendant in the caption of his complaint. A plaintiff must "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Therefore, "Healthcare Defendants" is not a Defendant in this action. To the extent that Plaintiff intended to refer to all Defendants employed by healthcare, that group term is insufficient to show that all of the healthcare Defendants were involved in the conduct alleged. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . .") And, as explained below, that group term is insufficient to join all Defendants employed by healthcare to this action.

Plaintiff claims that on May 5, 2024, "[Defendant] Griggs ordered [Defendant] Lounds to illegally fabricate a false misconduct report [] for an unsubstantiated/invalid charge of 'substance abuse' while knowing the misconduct report would be against Employee Handbook Rule 47 [] and Michigan Complied Law[s] [] (MCL) 445.65, 750.157a, 210, 248-249, and 280, where each [statute] deals with illegal use of state tools and computers." (*Id.*) Later that day, Plaintiff's mother and sister visited him at KCF and both "expressed anger and worry regarding Plaintiff's obvious injuries." (*Id.*, PageID.15.) Plaintiff states that, to date, he suffers physical pain in his head, neck, and stomach, and suffers from "digestive issues." (*Id.*)

Plaintiff states that on May 6, 2024, he received an initial review of the misconduct report by a non-party unknown Sergeant. (*Id.*) Plaintiff claims that he requested a full investigation, but the investigation did not occur. (*Id.*) Plaintiff asserts that "at no time did [Defendants] Griggs, Mills, Smith [or] Ferraro initiate an investigation . . . which was mandatory and required . . . under [MDOC Policy Directive] 03.03.105." (*Id.*, PageID.23.) On May 23, 2024, the non-party Hearing Officer found Plaintiff not guilty of substance abuse. (*Id.*, PageID.15.) The non-party Hearing Officer also "determined that neither [Defendant] Griggs, Radar, Lounds, and the unknown misconduct-reviewing Sergeant intentionally failed to comply with misconduct report drafting requirements, as well as requirements [] regarding Plaintiff's many disabilities." (*Id.*) Plaintiff asserts that neither Defendant Griggs, Lounds, Radar, the non-party COs, nor the non-party unknown Sergeant filled out the mandatory "Documentation of Effective Communications for Deaf and/or Hard of Hearing Prisoners" form for their contacts with Plaintiff on May 4, 2024, and May 6, 2024. (*Id.*, PageID.16.)

Plaintiff states that on May 9, 2024, he timely filed a grievance against Defendants Griggs, Lounds, Radar, and the unknown non-party COs regarding the incident in the bathroom. (*Id.*)

However, because the incident was related to a misconduct report, the grievance was rejected under MDOC policy. (*Id.*) On May 27, 2024, Plaintiff also filed a grievance regarding the alleged denial of medical care that occurred on May 4, 2024. (*Id.*) Plaintiff avers that both of these grievances were "properly exhausted." (*Id.*)

Plaintiff alleges that on May 10, 2024, Defendants "Griggs and Lounds conspired together by retaliating and moving Plaintiff from HU-A to HU-B by using [Defendant] Griggs's administrative powers." (*Id.*, PageId.16–17.) Furthermore, Plaintiff contends that "at the behest of [Defendant] Griggs, once Plaintiff arrived at HU-B, many COs began issuing knowingly false and/or frivolous misconduct reports against Plaintiff, and because several COs became angry over the fact that Plaintiff was being found not guilty for the misconduct reports." (*Id.*, PageID.17.)

**B. June to August 2024**

Plaintiff states that on June 3, 2024, he was in the bathroom stall using the toilet when Defendant Grover came into the bathroom and looked over into the stall that Plaintiff was in. (*Id.*) Defendant Grover then said, "Hey [Plaintiff], let me see if the stigma is real about black men!" (*Id.*) Plaintiff responded, "Get the f*** out of the bathroom with that predator s***!" (*Id.* (asterisks added).) Defendant Grover replied, "If you don't show me your c*** I'll just say you were in here smoking, and write you a bunch of tickets!" (*Id.* (asterisks added).) Plaintiff told Defendant Grover that he would report his sexual misconduct, but Defendant Grover said that no one would believe Plaintiff. (*Id.*) Plaintiff claims Defendant Grover "angrily demanded, 'Now, let me see how small it is.'" (*Id.*) Plaintiff states that he resisted Defendant Grover's demand and Defendant Grover "became angry." (*Id.*) Defendant Grover then called more COs into the bathroom. (*Id.*) Defendants Ferraro, Neal, Elliot, and Longsome arrived, and Plaintiff explained to Defendant Ferraro that Defendant Grover had sexually harassed Plaintiff. (*Id.*) Defendant Ferraro "then became unexpectedly and unnecessarily angry and told [Defendant] Grover to 'handcuff [Plaintiff].'" (*Id.*)

Plaintiff asked, "Why?" (*Id.*) Plaintiff claims Defendants "Ferraro, Grover, Neal, Elliot, and Longsome each began to literally throw Plaintiff around, all while kicking and punching him." (*Id.*, PageID.17–18.) Plaintiff was put in a restraining wheelchair and transported to Defendant KHS. (*Id.*, PageID.18.) There, "Plaintiff was seen by [Defendants] Nurse #1 and Nurse #2, who each commented about the obvious swellings and lacerations to his wrists and lower arm area." (*Id.*) Plaintiff asserts that Defendants Nurse #1 and Nurse #2 did not treat Plaintiff, "resulting in Plaintiff being sent back to HU-B in tremendous pain." (*Id.*)

Plaintiff states that when he returned to HU-B that day, "he went into the bathroom to personally aid his wounds." (*Id.*) When he exited the bathroom, Defendant Grover was waiting outside and ordered Plaintiff over for a "shake down" that Plaintiff alleges was "retaliatory." (*Id.*) Plaintiff claims that "while [Defendant] Grover was conducting the retaliatory shake down . . . [a non-party] CO [] told him how he can file a [Prison Rape Elimination Act] (PREA) complaint over the phone." (*Id.*)

The next day, on June 4, 2024, Plaintiff called the PREA hotline and filed a formal sexual harassment complaint against Defendant Grover. (*Id.*) Plaintiff also filed an "internal grievance" against Defendant Grover. (*Id.*) On June 11, 2024, Plaintiff was interviewed by Defendant Teneyck regarding the grievance. (*Id.*) On August 7, 2024, Plaintiff alleges that "while conspiring with [Defendants] Teneyck [and] Grover, in order to cover up [Defendant] Grover's sexual harassment incident . . . Defendant Moran issued an untimely and late misconduct report against Plaintiff for 'interference with the administration of rules,' which stems from the June 8, 2024 sexual harassment incident by [Defendant] Grover." (*Id.*) Plaintiff contends that the misconduct report was issued because Defendant Teneyck believed that Plaintiff lied about Defendant Grover sexually harassing Plaintiff in the interview on June 11, 2024. (*Id.*, PageID.18–19.)

Plaintiff alleges that on August 8, 2024, Defendant Mills "intentionally and improperly reviewed [Defendant] Teneyck's and [Defendant] Moran's falsified misconduct report" and "refused to review [Defendant] Grover's body cam [footage], in which all knew showed that [Defendant] Grover did sexually harass Plaintiff." (*Id.*, PageID.19.) Plaintiff asserts that on August 13, 2024, non-party "Captain R. Romeri" found Plaintiff guilty of the misconduct following the hearing, even though Plaintiff states that MDOC policy required the hearing to occur within 15 days of the of the violation date, i.e., by June 26, 2024. (*Id.*, PageID.19–20.)

Plaintiff further alleges that "[a]fter Plaintiff's PREA complaint and grievances, he learned that [Defendant] Lounds was still angry, and that [Defendant] Lounds got with his superiors, [Defendants] Griggs, Moran, and Mills, to retaliate and had them transferred back to [Defendant] Lounds's HU-A." (*Id.*, PageID.20.) "Once there, [Defendant] Lounds repeatedly harassed Plaintiff directly to retaliate, and even had other COs do the same." (*Id.*)

**C. July 2025**

On July 29, 2025, Plaintiff was in the bathroom and Defendant Lounds grabbed Plaintiff's arm while Plaintiff was naked. (*Id.*) Plaintiff alleges that "to cover up, [Defendant] Lounds falsely claimed Plaintiff assaulted him, resulting in a misconduct report against Plaintiff for assault and battery." (*Id.*) Plaintiff filed a grievance regarding this incident. (*Id.*)

**D. August 2025**

On August 20, 2025, Plaintiff was in the bathroom stall, and Defendants Lounds and Bator approached the stall. (*Id.*) Defendant Bator looked over the stall directly at Plaintiff. (*Id.*) Plaintiff alleges he told Defendant Bator "that he was in violation of his rights." (*Id.*) Defendant Bator responded, "You're in prison, you don't have rights." (*Id.*) And Plaintiff replied, "How [do] you figure I don't got no rights?" (*Id.*) Defendant Bator responded, "I'm going to show you!" (*Id.*) Plaintiff claims that Defendant Bator then called for Defendant Blossom and other COs. (*Id.*)

Plaintiff asserts that Defendants Bator and Blossom grabbed Plaintiff and pulled him from the stall. (*Id.*) After they pulled Plaintiff out of the stall, "[Defendants] Bator, Blossom, and COs began to kick and fist-punch Plaintiff." (*Id.*, PageID.20–21.) Plaintiff was taken to the control center and then taken to healthcare "to no avail." (*Id.*, PageID.21.) Plaintiff also asserts that Defendant Bator destroyed Plaintiff's "personal legal materials and property out of retaliation during the pack-up." (*Id.*) Plaintiff states that he exhausted grievances regarding this incident. (*Id.*)

As relief, Plaintiff seeks monetary damages, punitive damages, fees and costs, and unspecified injunctive relief. (*Id.*, PageID.26–27.)

## II. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of

> them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The United States Court of Appeals for the Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Lounds is the first Defendant named in both the caption of Plaintiff's complaint and the complaint's factual allegations. (Compl., ECF No. 1, PageID.1, 12.) Plaintiff alleges that Defendant Lounds, as well as Defendants Radar, Griggs, and Grover, were involved in the first alleged use of excessive force against Plaintiff on May 4, 2024. (*Id.*, PageID.11–13.) Plaintiff also alleges that Defendant Lounds grabbed Plaintiff's arm while Plaintiff was naked in the bathroom on July 29, 2025, and was involved in another excessive force incident, along with Defendants Bator and Blossom, against Plaintiff on August 20, 2025. (*Id.*, PageID.20–21.) Plaintiff further asserts a claim of civil conspiracy against all of the CO Defendants, but specifically against Defendants Griggs and Lounds, and state criminal law claims against Defendants Griggs and Lounds. (*Id.*, PageID.16–17.) These claims all involve Defendant Lounds and are properly joined. Fed. R. Civ. P. 18(a)

Shortly after the alleged excessive force incident on May 4, 2024, Plaintiff alleges that he received inadequate medical care by Defendants KHS, Mack, GPH, YCS, GEO and Well-Path. (*Id.*, PageID.13–14.) As an initial matter, the facts alleged by Plaintiff are insufficient to show that

the actions of Defendants KHS, Mack, GPH, YCS, GEO, and Well-Path in allegedly denying Plaintiff medical care, which are discrete and subsequent events, arise from the same transaction or occurrence as the alleged uses of excessive force by Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom. Thus, Plaintiff's medical care claims against Defendants KHS, Mack, GPH, YCS, GEO, and Well-Path are transactionally *unrelated* to Plaintiff's excessive force claims against Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom.

Although Plaintiff's medical care claims are transactionally *unrelated* to Plaintiff's claims of excessive force, Plaintiff also raises a retaliation claim against Defendant KHS relating to a drug test on May 4, 2024. (*Id*., PageID.14.) This claim is transactionally related to the excessive force claim because Plaintiff asserts that the excessive force incident on May 4, 2024 began because Defendants Lounds, Radar, Griggs, and Grover suspected that Plaintiff was on drugs, so Plaintiff was subjected to two initial drug tests, and a third "retaliat[ory]" drug test at the behest of Defendants KHS and Griggs. (*Id*., PageID.14.) Therefore, Plaintiff's retaliation claim against Defendant KHS is transactionally related to his claim of excessive force, but Plaintiff's medical claim against Defendant KHS is transactionally *unrelated* to Plaintiff's claim of excessive force.

Plaintiff alleges that on June 3, 2024, Defendant Grover sexually harassed Plaintiff in the bathroom, and then Defendants Grover, Ferraro, Neal, Elliot, and Longsome used excessive force against Plaintiff thereafter. (*Id*., PageID.17–18.) Plaintiff was sent to healthcare, where he alleges that Defendants Nurse #1 and Nurse #2 provided no treatment for the injuries that Plaintiff suffered from the alleged excessive force. (*Id.,* PageID.18.) Further, Plaintiff asserts a claim of retaliation against Defendant Grover regarding a shake down of Plaintiff after the June 3, 2024 bathroom incident (*id*., PageID.18); due process violations against Defendants Teneyck, Moran, and Mills regarding their issuance or review of a misconduct report against Plaintiff regarding the June 3,

2024 incident (*id*., PageID.18–19); civil conspiracy claims against Defendants Grover, Teneyck, and Moran regarding an untimely misconduct report (*id*., PageID.18); and due process claims against Defendants Griggs, Mills, Smith, and Ferraro regarding their failure to investigate the May 4, 2024 incident (*id*., PageID.15, 23). However, these events are discrete and separate from the excessive force incidents involving Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom. (*See id*., PageID.17–20.) Thus, Plaintiff's June 3, 2024 sexual harassment and excessive force claims against Defendants Grover, Ferraro, Neal, Elliot, and Longsome; medical claims against Nurse #1 and Nurse #2; retaliation claim against Defendant Grover; civil conspiracy claims against Defendants Grover, Teneyck, and Moran; and due process claims against Defendants Teneyck, Moran, Mills, Griggs, Smith, and Ferraro are transactionally *unrelated* to Plaintiff's excessive force claims against Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom.

As to Defendants Jones and Mahar, Plaintiff does not assert any factual allegations involving these Defendants. (*See generally id*.) For purposes of this Opinion, the Court assumes Defendants Jones and Mahar are properly joined as Defendants.

In summary, as described above, Plaintiff's allegations against Defendants Lounds, Radar, Griggs, Grover, Bator, Blossom, KHS, Jones, and Mahar are transactionally related; however, Plaintiff's allegations against all of the other Defendants named in the complaint stem from other discrete events. It appears that Plaintiff believes that all of the events set forth in the complaint are related because he subjectively views all of the events as part of a conspiracy against him. (*See id*., PageID.24.) However, Plaintiff's subjective belief and interpretation of events do not transform separate events regarding medical care, investigations, alleged retaliations, misconduct reports, and other, unrelated instances of sexual misconduct and excessive force into events that arise out of the same transaction or occurrence.

Under these circumstances, the Court concludes that Plaintiff has properly joined Defendants Lounds, Radar, Griggs, Grover, Bator, Blossom, KHS, Jones, and Mahar. However, the Court concludes that Plaintiff has improperly joined Defendants Mack, GPH, YCS, GEO, Well-Path, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills to this action.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Mack, GPH, YCS, GEO, Well-Path, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills to this action, the Court must determine an appropriate remedy.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845.

Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred in 2024 and 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Mack, GPH, YCS, GEO, Well-Path, Grover, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against Defendants Mack, GPH, YCS, GEO, Well-Path, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Mack, GPH, YCS, GEO, Well-Path, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[3]

---

[3] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed in forma pauperis. As fully discussed in this Opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its

**III. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

---

discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

With respect to properly joined Defendants Lounds, Radar, Griggs, Grover, Bator, Blossom, KHS, Jones, and Mahar, Plaintiff brings the following § 1983 claims against them: Eighth Amendment excessive force claims, First Amendment retaliation claims, civil conspiracy claims, and state law claims.

**A. Defendants Jones and Mahar**

Plaintiff names Defendants Jones and Mahar as Defendants in the caption of his complaint. (Compl., ECF No. 1, PageID.1.) However, Plaintiff fails to name Defendants Jones and Mahar in the body of his complaint. (*See generally id.*)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore*, 92 F. App'x at 190.

Here, Plaintiff does not name Defendant Jones or Defendant Mahar in the body of the complaint. (*See* Compl., ECF No. 1.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Therefore, Plaintiff's claims against Defendants Jones and Mahar fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2).

Accordingly, for these reasons, any intended claims against Defendants Jones and Mahar will be properly dismissed for failure to state a claim.

**B. Eighth Amendment Claims**

In his complaint, Plaintiff sets forth three claims under the Eighth Amendment against the properly joined Defendants. Plaintiff asserts (1) Defendants Lounds, Radar, Grover, and Griggs used excessive force against Plaintiff on May 4, 2024, (Compl., ECF No. 1, PageID.12); (2) Defendant Lounds grabbed Plaintiff's arm while Plaintiff was naked in the bathroom on July 29, 2025, (*id*., PageID.20); and (3) Defendants Lounds and Bator sexually harassed Plaintiff and thereafter, Defendants Bator and Blossom used excessive force against Plaintiff on August 20, 2025, (*id*., PageID.21).

At this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to Plaintiff. Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment claims, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Lounds, Radar, Grover, Griggs, Bator, and Blossom at this time.

### C. First Amendment Retaliation Claims

Plaintiff also asserts four claims of retaliation under the First Amendment against the properly joined Defendants. Plaintiff asserts (1) Defendants Griggs and KHS subjected Plaintiff to a third drug test when he returned from the hospital on May 4, 2024, (*id*., PageID.14); (2) Defendants Griggs and Lounds moved Plaintiff from HU-A to HU-B where Plaintiff received "false and/or frivolous" misconduct reports from non-party COs "at the behest of [Defendant] Griggs," (*id*., PageID.16–17); (3) Defendant Lounds transferred Defendants Griggs, Moran, and Mills back to HU-A, Defendant Lounds "repeatedly harassed Plaintiff" once there, and grabbed Plaintiff's arm in the bathroom while Plaintiff was naked on July 29, 2025, (*id*., PageID.20); and (4) Defendant Bator destroyed Plaintiff's "personal legal materials and property" (*id.* PageID.21).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (finding that, in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

**1. May 4, 2024 Drug Test—Defendants Griggs and KHS**

Plaintiff claims that he was subject to a retaliatory drug test by Defendants Griggs and KHS[4] on May 4, 2024; however, Plaintiff does not allege that he was engaged in constitutionally protected conduct prior to Defendants' action.

Plaintiff alleges that on May 4, 2024, he was accused of being under the influence of drugs. (*See* Compl., ECF No. 1, PageID.12.) Plaintiff was first drug tested by Defendant Mack, and then drug tested at the hospital. (*See id.*, PageID.13–14.) Plaintiff asserts that the drug test results were negative. (*See id.*) Plaintiff alleges that Defendants Griggs and KHS retaliated against Plaintiff by having Plaintiff drug tested again when he returned to KCF from the hospital. (*See id.*, PageID.14.)

However, Plaintiff's factual allegations fall short because Plaintiff does not allege any facts to suggest that he was involved in constitutionally protected conduct that motivated this alleged act of retaliation. At the time Plaintiff was subject to the drug tests, Plaintiff had not filed any grievances or engaged in any other constitutionally protected conduct to motivate an allegedly

[4] The Court notes that for the purposes of this Opinion only, the Court assumes, without deciding, that Defendant KHS is an entity that is amendable to suit. As set forth herein, even assuming Defndant KHS is amenable to suit, Plaintiff fails to state a claim against this Defendant upon which relief may be granted.

retaliatory drug test. Plaintiff only alleges the ultimate fact of retaliation and does not support his conclusion with material facts. *See Murphy*, 833 F.2d at 108; *Harbin-Bey,* 420 F.3d at 580. Accordingly, the Court will dismiss Plaintiff's retaliation claims against Defendants Griggs and KHS regarding the drug test.

**2. Move to HU-B and False and/or Frivolous Misconduct Reports—Defendants Griggs and Lounds**

Plaintiff claims that he filed a grievance "regarding the 5/4/24 assaults by [Defendants] Griggs, Lounds, Radar, and COs" on May 9, 2024, and on May 10, 2024, Defendants "Griggs and Lounds conspired together by retaliating and moving Plaintiff from HU-A to HU-B by using [Defendant] Griggs's administrative powers." (Compl., ECF No. 1, PageID.16–17.) "Also at the behest of [Defendant] Griggs, once Plaintiff arrived at HU-B, many CO[s] began issuing false and/or frivolous misconduct reports against Plaintiff and because several COs became angry over the fact that Plaintiff was being found not guilty for the misconduct reports." (*Id*., PageID.17.)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

An adverse action is an action that is capable of deterring a person of ordinary firmness from exercising their constitutional rights. *Thaddeus-X*, 175 F.3d at 394. In determining whether defendants' conduct would deter a person of ordinary firmness from engaging in that conduct, a plaintiff "need not show actual deterrence." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Being transferred to a different housing unit, without more, would not deter a person of ordinary firmness from submitting grievances. *Mulazim v. Corrigan*, 7 F. App'x 427, 431 (6th Cir. 2001) (citing *Thaddeus-X*, 175 F.3d at 398) (finding that a move from one cell to another does not constitute an adverse action unless, for example, the plaintiff alleges he was harassed, physically

threatened, or transferred to an area with unhealthy living conditions); *see also Jones v. Cline*, No. 1:17-cv-324, 2017 WL 1531875, at *7 (W.D. Mich. Apr. 28, 2017) (finding that a transfer to a different unit in the same prison is not an adverse action).

Plaintiff's move from HU-A to HU-B on its own is insufficient to show adverse action. *See Mulazim*, 7 F. App'x at 431. But Plaintiff also alleges that once he arrived at HU-B, "at the behest of [Defendant] Griggs . . . many COs began issuing knowingly false and/or frivolous misconduct reports against Plaintiff, and because several COs became angry over the fact that Plaintiff was being found not guilty for the misconduct reports." (Compl., ECF No. 1, PageID.17.)

The Sixth Circuit has found that the issuance of a misconduct ticket can constitute an adverse action. *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) Although Plaintiff's allegations lack specificity, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendants Griggs and Lounds premised on moving Plaintiff to a housing unit where he was then issued allegedly false and frivolous misconduct reports.

**3. Transferring Defendants Griggs, Moran, and Mills back to HU-A, Repeated Harassment, and July 29, 2025 incident–Defendant Lounds**

Plaintiff asserts that "after Plaintiff's PREA complaint and grievances, he learned that [Defendant] Lounds was still angry and that [Defendant] Lounds got with his superiors, [Defendants] Griggs, Moran, and Mills, to retaliate, and had them transferred back to [Defendant] Lounds' HU-A." (Compl., ECF No. 1, PageID.20.) "Once there, [Defendant] Lounds repeatedly harassed Plaintiff directly to retaliate, and even had other COs do the same." (*Id.*) Further, Plaintiff claims that on July 29, 2025, "[Defendant] Lounds created another incident in HU-A's bathroom involving Plaintiff [] while he was naked and grabbed his arm." (*Id.*)

The filing of a grievance is constitutionally protected conduct. *See Smith*, 250 F.3d at 1037. Additionally, this Court has found that the filing of a PREA complaint is constitutionally protected conduct. *Onumonu v. Mich. Dep't of Corr.*, No. 1:20-cv-816, 2022 WL 19003249, at *2 (W.D. Mich. Dec. 29, 2022), *R&R adopted*, 2023 WL 2134243 (W.D. Mich. Feb. 21, 2023). At this stage of the proceedings, the Court will assume without deciding that Plaintiff's allegations above constitute adverse actions; however, Plaintiff alleges no facts to suggest that Defendant Lounds's actions were motivated by Plaintiff's prior grievances and PREA complaint.

Plaintiff asserts that he filed a grievance against Defendant Lounds on May 9, 2024, regarding the May 4, 2024 excessive force incident, and filed a grievance and PREA complaint against Defendant Grover on June 4, 2024, regarding the June 3, 2024 excessive force incident. (Compl., ECF No. 1, PageID.16, 18.) In order to show that Defendant Lounds retaliated against Plaintiff for filing a grievance, Plaintiff must show a causal connection between his protected conduct and the adverse action. *See Thaddeus-X*, 175 F.3d at 386–87. Thus, "the defendant must have known about the protected activity in order for it to have motivated the adverse action." *Id.* at 387 n.3. *See also Onumonu*, 2022 WL 19003249, at *3 ("A prison official cannot unlawfully retaliate against a prisoner because of his protected conduct if the official is unaware of the protected conduct in the first instance.") Plaintiff alleges no facts to suggest that Defendant Lounds knew that Plaintiff filed a grievance against him. (*See* Compl., ECF No. 1, PageID.16–20.) It is unclear when Plaintiff was transferred back to HU-A, but Plaintiff must have been transferred back to HU-A from HU-B at some point. (*See generally id.*) And although it is unclear when Defendant Lounds moved Defendants Griggs, Moran, and Mills to HU-A and "repeatedly harassed" Plaintiff, the incident involving Defendant Lounds allegedly grabbing Plaintiff's arm while he was naked in the bathroom occurred on July 29, 2025, over a year after Plaintiff filed his grievance against

Defendant Lounds. *See Hill*, 630 F.3d at 476 (finding that temporal proximity can prove retaliatory motive). Moreover, Plaintiff does not explain how his grievance and PREA complaint against Defendant *Grover* motivated Defendant *Lounds* to retaliate against Plaintiff. (*See id.*) Accordingly, Plaintiff's First Amendment retaliation claims against Defendant Lounds premised on transferring Defendants Griggs, Moran, and Mills to HU-A, harassing Plaintiff, and the July 29, 2025 bathroom incident, will be dismissed for failure to state a claim.

#### 4. Destruction of Legal Materials and Property–Defendant Bator

Lastly, Plaintiff claims that at some point after the August 20, 2025 incident of excessive force by Defendants Lounds, Bator, and Blossom, Plaintiff filed a grievance regarding the incident. (Compl., ECF No. 1, PageID.20–21.) Defendant Bator then "destroy[ed] Plaintiff's personal legal materials and property out of retaliation" during a "pack-up." (*Id.*, PageID.21.)

Although Plaintiff has by no means proven his retaliation claim, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Bator regarding the alleged destruction of Plaintiff's legal materials and property at this time.

### D. Section 1983 Civil Conspiracy Claims–All CO Defendants and Defendants Griggs and Lounds

Plaintiff alleges that all of the corrections officer Defendants conspired together to retaliate against Plaintiff in violation of his Eighth and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.24, 26.) And, specifically, Plaintiff alleges that Defendants Griggs and Lounds conspired together on May 10, 2024 to retaliate against Plaintiff by moving him from HU-A to HU-B, as described above. (*Id.*, PageID.16–17.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of

a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565–66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff alleges generally that Defendants "engaged in their concerted activities described, with contemplating knowledge, whether it was expressed or implied agreements, to deprive Plaintiff of [his] civil rights." (Compl., ECF No. 1, PageID.26.) Also, Plaintiff asserts that Defendants "Griggs and Lounds conspired together by retaliating and moving Plaintiff from HU-A to HU-B by using [Defendant] Griggs's administrative powers." (*Id.*, PageID.16–17.) But Plaintiff does not state what "agreement" or "plan" existed. Without some degree of specificity, Plaintiff's allegations are vague and insufficient to show that Defendants engaged in a conspiracy. *See Twombly*, 550 U.S. at 565–66.

Furthermore, the fact that each Defendant allegedly took an adverse action against Plaintiff does not on its own show that they engaged in a civil conspiracy. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was

not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible civil conspiracy claim.

Accordingly, for these reasons, Plaintiff's § 1983 civil conspiracy claims will be dismissed for failure to state a claim.

**E. State Law Claims–Defendants Griggs and Lounds**

Lastly, Plaintiff seeks to bring state criminal law claims against Defendants Griggs and Lounds. Plaintiff asserts that "[Defendant] Griggs ordered [Defendant] Lounds to illegally fabricate a false misconduct report [] for an unsubstantiated/invalid charge of 'substance abuse' while knowing the misconduct report would be against Employee Handbook Rule 47 [] and Michigan Complied Law[s] [] (MCL) 445.65, 750.157a, 210, 248-249, and 280, where each [statute] deals with illegal use of state tools and computers." (Compl., ECF No. 1, PageID.14.) As to Plaintiff's claim that Defendants Griggs and Lounds violated "Employee Handbook Rule 47," he fails to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and § 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (holding that a parole board's failure to follow state procedural standards could constitute a violation of state law but not federal law).

As to Plaintiff's claim that Defendants Griggs and Lounds violated state criminal law, "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, Plaintiff's request in this

civil action to bring state criminal charges against Defendants is frivolous and fails to state a claim for which relief can be granted.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. For the foregoing reasons, pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court will drop as misjoined Defendants Mack, GPH, YCS, GEO, Well-Path, Ferraro, Neal, Elliot, Longsome, Nurse #1, Nurse #2, Smith, Teneyck, Moran, and Mills. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

Further, having conducted the review required by the PLRA, the Court determines that Defendants Jones, Mahar, and KHS will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all claims against remaining Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom *except for* the following claims, which remain in the case: the Eighth Amendment claims against Defendants Lounds, Radar, Griggs, Grover, Bator, and Blossom; the First Amendment retaliation claim against Defendants Griggs and Lounds regarding moving Plaintiff to HU-B and issuing false and/or frivolous misconduct reports against Plaintiff; and the First Amendment retaliation claim against Defendant Bator regarding the alleged destruction of Plaintiff's legal materials and property.

An Order consistent with this Opinion will be entered.

Dated: September 22, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge